IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LUCAS HORTON,                          §
                                       §
            Plaintiff,                 §
                                       §
VS.                                    §        Civil Action No. 3:22-CV-2736-D
                                       §
TEXAS FEDERATION FOR                   §
CHILDREN PAC, INC.,                    §
                                       §
            Defendant.                 §

MEMORANDUM OPINION
AND ORDER

Plaintiff Lucas Horton ("Horton") sues defendant Texas Federation for Children PAC,

Inc. ("TFC"), alleging several violations of the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227, the regulations implementing it, 47 C.F.R. § 64.1200, and

related state law.  TFC moves to dismiss Horton's first amended complaint ("FAC") under

Fed. R. Civ. P. 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and failure to state

a claim on which relief can be granted.  For the following reasons, the court grants the

motion in part and denies it in part.

I

Horton alleges that he received three text messages from TFC soliciting donations and

urging recipients to reelect an incumbent Republican Texas State Representative.[1]  Horton

---

[1]For purposes of deciding TFC's Rule 12(b)(6) motion, the court recounts the facts
in the light most favorable to Horton, the nonmovant. *See Lovick v. Ritemoney Ltd.*, 378 F.3d
433, 437 (5th Cir. 2004).

avers that he is the "owner and customary user" of a phone number ending in 3341 (the number to which the text messages at issue were sent), and that that number has been on the national do-not-call list ("DNC list") since 2011.  Horton acknowledges that the texts did not identify TFC as the sender, but he notes that the link included in the messages led to TFC's website.  Horton alleges that he never had previous contact with TFC before receiving these messages and that he is not a registered Republican.

According to the FAC, the messages were sent using an automatic telephone dialing system ("ATDS"), as defined by regulation, and that this system has "the capacity to store numbers, or to randomly produce telephone numbers to send text messages using a random or sequential number generator."  FAC ¶ 26.  This is allegedly proved by the fact, *inter alia*, that the text messages were impersonal and did not address Horton by name; the parties had no preexisting relationship; Horton replied to the text messages and never received a response (suggesting that the sender did not monitor incoming messages); and Horton was unable to complete a phone call to any of the telephone numbers used to send the messages.

After Horton filed suit, TFC moved to dismiss Horton's complaint.  But before that motion was decided, Horton obtained leave to amend his complaint and filed the FAC.  TFC now moves to dismiss the FAC.  Horton opposes the motion, which the court is deciding on the briefs.

II

In resolving TFC's Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of Horton's complaint by "accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). To survive the motion, Horton must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Because Horton is proceeding *pro se*, the court construes the allegations of the complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam); *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam).

- 3 -

III

TFC argues that the second, third, and sixth counts of Horton's FAC should be dismissed for failure to state a claim because TFC's activity is exempted by regulation from TCPA liability.

A

Horton's second cause of action is captioned "Violation of 47 U.S.C. § 227(b)(1)(B)." In that count, Horton avers that he "has been on the National Do Not Call List since December of 2011 . . .. As a result of the damages suffered by [Horton], he is entitled to recover $500 in a civil fine for the offense." FAC at [8].[2] Horton also asserts that "treble damages of $1500 are more than appropriate." *Id.*

Horton's allegations are deficient in two respects: First, his claim for contacting a number on the DNC list is purportedly based on 47 U.S.C. § 227(b)(1)(B). But "[p]lainly, that section does not govern a DNC-list action." *Horton v. Nat'l Republican Senatorial Comm.* (*Horton v. NRSC I*), 2022 WL 18673259, at *3 (N.D. Tex. Nov. 18, 2022) (Toliver, J.), *adopted in relevant part by* 2023 WL 372066, at *1 (N.D. Tex. Jan. 23, 2023) (Fish, J.). Instead, it is § 227(c) that "establishes the national DNC list and creates a private right of action against particular entities." *Horton v. NRSC I*, 2022 WL 18673259, at *3. Horton's reliance on § 227(b)(1)(B) is therefore misplaced.

Second, even if the court construes Horton's second claim to be based on § 227(c) rather than

_____

[2]Some parts of the FAC do not contain paragraph numbers, and the pages are unnumbered. The court is supplying this page number based on the ECF pagination.

§ 227(b)(1)(B),[3] "political organizations are exempt from the DNC registry requirement." *Id.* (citing *Libby v. Nat'l Republican Senatorial Comm.*, 551 F.Supp.3d 724, 729 (W.D. Tex. 2021)).  "[T]he FCC has explained that calls involving 'surveys, market research, political or religious speech' do not fall within the definition of 'telephone solicitation' and will not be precluded by registering a number on the national DNC list."  *Hunsinger v. Dynata LLC*, 2023 WL 2377481, at *8 (N.D. Tex. Feb. 7, 2023) (Rutherford, J.) (quoting *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14040 (2003)).  As Horton's FAC is framed, TFC is sending text messages for political purposes. Accordingly, the court dismisses Horton's second cause of action for failure to state a claim on which relief can be granted.

B

Horton's third cause of action alleges that he is "entitled to an award of at least $500 in damages" because TFC violated 47 C.F.R. § 64.1200(d)(1) by neglecting to maintain a written telemarketing policy.  FAC at [8].  This regulation, however, applies on its face only to communications made for "telemarketing purposes."  47 C.F.R. § 64.1200(d)(1) ("Persons or entities making calls *for telemarketing purposes* must have a written policy, available upon demand, for maintaining a do-not-call list." (emphasis added)).  The regulation defines

---

[3]"A plaintiff need not state the *legal* basis for [his] claim so long as [he] plausibly alleges the *factual* basis for it."  *Shippitsa Ltd. v. Slack*, 2019 WL 3304890, at *12 (N.D. Tex. July 23, 2019) (Fitzwater, J.) (emphasis in original) (citing *Johnson v. City of Shelby*, 570 U.S. 10, 10 (2014) (per curiam) ("Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief'; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.")).

"telemarketing," as used in § 64.1200, as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13). Moreover, "[t]ax-exempt nonprofit organizations are not required to comply with 64.1200(d)," including its written telemarketing policy requirement. *Id.* § 64.1200(d)(7).

Horton has failed to plausibly plead that § 64.1200(d) applies to TFC, generally, and to the particular messages that gave rise to this lawsuit. *See Horton v. NRSC I*, 2022 WL 18673259, at *4-5. Horton does not allege facts from which the court can draw the reasonable inference that the text messages "encourag[ed] the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(13). He merely asserts that the text messages included a link to TFC's website and requested donations for a political campaign. The court therefore concludes that Horton has not plausibly pleaded a claim for relief based on a violation of § 64.1200(d).

Nor has Horton plausibly alleged that TFC is the type of organization to which § 64.1200(d) applies. *See Horton v. NRSC I*, 2022 WL 18673259, at *5 ("Plaintiff does not plausibly allege the regulation applies to Defendant, a nonprofit political organization."). Other courts have explicitly held that, because of this exemption, requests for donations made by or on behalf of a nonprofit political organization do not amount to telemarketing under the TCPA. *See, e.g.*, *Bennett v. Veterans Aid Pac, Inc.*, 2022 WL 1632553, at *5 (E.D. Tex. May 23, 2022).

Accordingly, the court grants TFC's motion to dismiss Horton's third cause of action.

C

Horton's sixth cause of action alleges that TFC violated 47 C.F.R. § 64.1200(d)(4) by failing to identify itself and provide its contact information when it sent the challenged text messages to Horton.  As is true for Horton's claim under § 64.1200(d)(1), § 64.1200(d)(4) does not apply to TFC as a nonprofit organization.  *See* 47 C.F.R. § 64.1200(d)(7).  And it does not apply to the specific text messages that TFC sent to Horton because they do not constitute telemarketing, as defined by regulation, *see* 47 C.F.R. § 64.1200(f)(13).  Accordingly, the court also dismisses Horton's sixth cause of action.

IV

TFC maintains that Horton's remaining TCPA claims—the first and fifth causes of action alleged in the FAC—should be dismissed because Horton has failed to adequately allege the requisite elements of the claims.  TFC posits that Horton has not plausibly pleaded that TFC used an ATDS to send the messages, that that system stored or produced Horton's number using a random number generator, and that TFC was the sender of the messages.

A

Under the TCPA, it is

> unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

47 U.S.C. § 227(b)(1)(A)(iii).  "A text message to a cellular telephone, it is undisputed,

qualifies as a 'call' within the compass of [the TCPA]." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). Therefore, "a TCPA violation occurs if: (1) the defendant messaged a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Horton v. Nat'l Republican Senatorial Comm.* (*Horton v. NRSC II*), 2023 WL 372066, at *3 (N.D. Tex. Jan. 23, 2023) (Fish, J.) (internal quotation marks and alteration omitted) (quoting *Adams v. Safe Home Sec. Inc.*, 2019 WL 3428776, at *1 (N.D. Tex. July 30, 2019) (Lynn, C.J.)). TFC maintains that Horton has failed to plausibly allege the first and second elements. The court will address each in turn.

B

Horton alleges that TFC sent the messages on the basis that the link included in the messages led to TFC's website. TFC maintains that this is not adequate to establish that TFC is responsible for sending the text messages. The court holds that Horton has plausibly pleaded that TFC (directly or through an agent)[4] sent the messages in question.

Inherent in the first element of a TCPA claim is the requirement that the plaintiff plausibly plead that *the defendant* is the one who sent the messages at issue. *See Adams*, 2019 WL 3428776, at *1. To plausibly plead that TFC sent the messages in question, Horton relies on the allegation that the link included in each message directs the recipient to TFC's website. The FAC can be read to support the reasonable inference that TFC "or its agent" sent the messages. This is because it is reasonable for the court to draw the inference that

---

[4]"[T]here is vicarious liability for TCPA violations." *Campbell-Ewald*, 577 U.S. at 168.

- 8 -

a text message soliciting donations to a particular organization and linking directly to the website of that organization would have been sent either by the organization or by someone acting on its behalf.  Construing the allegations liberally, as the court must, Horton has plausibly pleaded that TFC or someone acting on its behalf sent the messages.

C

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; or (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  To be an ATDS, "a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator."  *Facebook, Inc. v. Duguid*, ___ U.S. ___, 141 S.Ct. 1163, 1167 (2021).

"Simply alleging the use of an ATDS, without more, is insufficient to sustain a TCPA claim."  *Cunningham v. Nationwide Sec. Sols., Inc.*, 2017 WL 10486988, at *3 (N.D. Tex. Nov. 2, 2017) (Lynn, C.J.).  And courts have acknowledged "the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery . . .."  *Id.* (quoting *Hickey v. Voxernet LLC*, 887 F.Supp.2d 1125, 1129-30 (W.D. Wash 2012)).

In light of this difficulty, plaintiffs can plausibly plead the use of an ATDS by alleging facts that indirectly suggest that such a device was used.  *See Hunsinger v. Alpha Cash Buyers, LLC*, 2022 WL 562761, at *4 (N.D. Tex. Feb. 24, 2022) (Fitzwater, J.).  For example, in cases involving allegedly unlawful text messages, plaintiffs might rely on "the content of the message, the context in which it was received, and the existence of similar

messages to raise an inference that an ATDS was used." *Id.* (citing *Jones v. FMA All. Ltd.*, 978 F.Supp.2d 84, 87 (D. Mass. 2013)).  Other probative factors may include whether the messages were personalized or generic, whether identical messages were sent to multiple parties at the same time, and whether a short code[5] was used to send the message.  *Id.* (citing *Schley v. One Planet Ops Inc.*, 445 F.Supp.3d 454, 459-60 (N.D. Cal. 2020)); *see also Horton v. NRSC II*, 2023 WL 372066, at *4 (discussing cases involving both phone calls and text messages).

Horton has adequately pleaded that an ATDS was used to send the challenged text messages.  In his FAC, he alleges that the text messages "were made using an automatic telephone dialing system as defined at 47 U.S.C. § 227(a)(1) and as explained in subsequent FCC regulations and orders."  FAC ¶ 26.  He also asserts that the system TFC used has the "capacity to store numbers, or to randomly produce telephone numbers to send text messages using a random or sequential number generator."  *Id*.  Horton maintains that these allegations are supported by the following facts: that all three messages were generic and not addressed to Horton specifically; the frequency of the messages; the absence of any preexisting relationship between the parties, and the fact that Horton is not a registered Republican; the coincident conclusion that there is no way—aside from the use of an ATDS—that TFC

---

[5]Short message service ("SMS") messages are standard text messages received on a cellular telephone. *Jovanovic v. SRP Invs. LLC*, 2021 WL 4198163, at *3 n.1 (D. Ariz. Sept. 15, 2021).  "SMS long codes are standard ten-digit telephone numbers including an area code, used by individual and business subscribers alike." *Id.*  Text messages can also be sent from an "SMS short-code," which is a "four to six digit telephone number used only for texting, and most frequently for commercial marketing purposes." *Id*.

would have had access to Horton's telephone number; and that the sender's phone numbers (although long codes rather than the short codes typically used by an ATDS) did not receive incoming calls and were not monitored for incoming text messages. These allegations, construed both liberally due to Horton's status as a *pro se* litigant and also in the light most favorable to Horton as the nonmovant, are sufficient to plausibly plead that TFC used an ATDS to send the text messages to Horton.

Other judges of this court have dismissed similar complaints—indeed, including those filed by this same plaintiff. *See, e.g.*, *Horton v. NRSC II*, 2023 WL 372066, at *5-6. But Horton's FAC includes additional allegations that other complaints did not include. He alleges that he received multiple generic text messages, whereas, in *Horton v. NRSC II*, he did not contend that he received multiple messages. *See id.* at *6. Perhaps more important, the complaint in *Horton v. NRSC II* required that the court assume, based on largely similar allegations as those made here, an agency relationship between two seemingly unrelated corporate entities. *Id.* at *5. But here the court need not make that unreasonable inferential leap; based on the FAC's allegations, it is reasonable to infer that TFC sent the text messages (or would be vicariously liable based on the conduct of whoever did send the messages) because the link included with the messages led directly to TFC's website, where someone could make a donation and learn more about the organization.

Accordingly, the court concludes that Horton has plausibly pleaded that TFC used an ATDS to send the text messages at issue.

V

TFC contends that the court should dismiss Horton's state-law claims (his fourth and seventh causes of action) for lack of subject matter jurisdiction. But because the court is in part denying TFC's motion to dismiss Horton's federal claims and it can exercise supplemental jurisdiction over his closely-related state-law claims, dismissal of the state-law claims for want of subject matter jurisdiction is not warranted at this time. *See Cedillo v. Valcar Enters. & Darling Del. Co.*, 773 F. Supp. 932, 939-42 (N.D. Tex. 1991) (Fitzwater, J.) (discussing supplemental jurisdiction). Accordingly, TFC's motion to dismiss Horton's state-law claims (his fourth and seventh causes of action) is denied.

\* \* \*

For the reasons explained, the court grants TFC's motion in part and dismisses Horton's second, third, and sixth causes of action. The court denies TFC's motion to dismiss Horton's first, fourth, fifth, and seventh causes of action.

**SO ORDERED**.

April 27, 2023.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 12 -